omissions that allegedly occurred during SLMI's bankruptcy, which was filed on February 16, 2001 and dismissed over five and a half years later.

According to the complaint, SLMI is a dissolved Colorado corporation. It is apparently the successor-in-interest to Stan Lee Media, Inc., a Delaware corporation. According to the Motion attached to the complaint as Exhibit $2^4$: On or about August 31, 2000, CSC and SLMI entered into an agreement whereby SLMI purchased all of the issued and outstanding stock in CP, which was a wholly owned subsidiary of CSC. CP owned intellectual property associated with the character known as Conan the Barbarian (collectively, the "IP Rights"). In exchange for the sale of stock, CSC received stock in SLMI which was subject to certain price protection guarantees. CSC claimed that the stock trading criteria gave rise to non-recourse obligations, which were secured by a lien against the IP Rights which lien gave CSC a right to foreclose if the stock trading criteria were not met.

On February 16, 2001, SLMI filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, Central District of California. According to the Motion attached to the complaint: SLMI was represented in the bankruptcy by Martin J. Brill. An Official Committee of Unsecured Creditors ("the Committee") was formed and also represented by bankruptcy counsel, Gary Klausner. (See Complaint and Motion attached thereto as Exhibit 2).

1  The Motion also provides that: On or about August 24, 2001, CSC filed a
2  motion for relief from stay seeking to foreclose on the IP Rights. The motion for
3  relief was **opposed** by the Committee and SLMI. Supplemental briefing was filed
4  by CSC in support of its motion. Prior to the hearing on CSC's motion, the
5  Committee began negotiations with CSC to resolve the dispute. The Committee
6  negotiated with CSC on behalf of SLMI. Mr. Klausner, counsel for the Committee,
7  was the "person primarily involved in negotiating" a resolution with CSC. (See
8  Declaration of Gary Klausner ("Klausner") ¶ 7, attached to the Motion, which is
9  attached as Exhibit 2 to the Complaint). After "extensive negotiations", the parties
10 entered into a Stipulation to Compromise Disputes with CSC (the "Stipulation").
11 According to the Stipulation, CSC agreed to pay SLMI: (a) $275,000 by June 30,
12 2002; and (b) an additional $200,000 and 20% of certain contingent compensation
13 it received from Warner Brothers in the event that Warner Brothers exercised a
14 certain option to make a film, which it never did. In exchange, SLMI agreed to: (a)
15 assign the stock in CP back to CSC; and (b) assign all contract rights SLMI granted
16 relative to the IP Rights. CSC granted SLMI a security interest in the IP Rights and
17 a lien against the CP stock to secure the payment obligations of CSC. (Klausner ¶
18 7).

On March 4, 2002, SLMI filed a Motion Pursuant to Bankruptcy Code 9019
to Approve the Stipulation. According to the Committee's attorney, Mr. Klausner:

---

[4] This Court may take Judicial Notice of documents attached to the complaint.

- 8 -

he the Stipulation had been entered into "after extensive negotiations"; that it would "yield a substantial net benefit for the estate and its creditors"; and was "fair, reasonable, and in the best interest of the estates." (Klausner, ¶¶ 6-10). SLMI's Chief Executive Officer, Kenneth Williams, the Committee, as well as numerous others, were all given notice of SLMI's Motion.

On March 25, 2002, the bankruptcy court granted SLMI's Motion and issued an order approving the Stipulation ("the Settlement Approval Order"). Pursuant to the Settlement Approval Order, SLMI was given authority to: "take all steps reasonably necessary to consummate the terms and conditions of the Stipulation". (See Exhibit "C" to RFJN). SLMI did not appeal the Settlement Approval Order or otherwise seek review of it.

In April, 2002, SLMI and CSC entered into a Pledge Agreement and Security Agreement to consummate the sale. On or around April 30, 2002, SLMI transferred the stock in CP and assigned the IP Rights to CSC. CSC made payment to SLMI which SLMI accepted. The Stock Power and Assignment were executed by SLMI's Controller, Junko Kobayashi, who signed as SLMI's "Authorized Agent". (See Pledge Agreement, Security Agreement, and Assignment attached as Exhibit 1 to the complaint).

Since the IP Rights were transferred, CSC/CPI has exploited the rights. (See Complaint ¶¶ 5, 8, 80, 85 and 90). CPI has registered hundreds of copyrights and

___

(See Fed.R.Civ.P. Rule 201).

trademarks <u>worldwide</u> relating to the IP Rights since they were assigned. (See Exhibits "G" and "H" to RFJN). CPI has invested substantial sums of money researching, protecting and enforcing its ownership worldwide in the IP Rights. In fact, CPI has obtained three Judgments in this District alone. (See Exhibits "D", "E", and "F" attached to RFJN). The exploitation of the IP Rights by CPI has been open and continuous since in or around 2003.

Since at least as early as January, 2007, SLMI has been engaged in litigation involving other orders made in the bankruptcy court. Despite the open and continuous exploitation of the IP Rights since 2003 and SLMI's involvement in other litigation relating to orders made in the same bankruptcy proceeding, since early 2007, SLMI failed to file the present action until August 19, 2011, which was the day of the worldwide premiere of the film, *Conan the Barbarian*.

### III.    Legal Standard

A court can dismiss an action under Rule 12(b)(6) where the plaintiff fails to allege either a cognizable legal theory or sufficient facts in support of a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.1990). A plaintiff's obligation to provide the grounds entitling it to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations when 'the running of the statute is apparent on the

face of the complaint.' " Von Saher v. Norton Simons Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006).

### IV. The First Claim for Relief from the Settlement Approval Order Should Be Dismissed Because SLMI Has Failed to Allege a Basis for an Independent Action Under Rule 60(b) and the Clam is Untimely.

An independent action under Rule 60(b) is available only "to prevent a grave miscarriage of justice." United States v Beggerly 524 U.S. 38, 47 (1998). "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." See Beggerly at 46 quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244.

SLMI's claim that its failure to give notice to all of its shareholders of the bankruptcy or the Motion to approve the Stipulation entitles to relief under Rule 60(b) has no merit. A plaintiff must have standing to bring an action. In other words, he must show that he has suffered concrete and particularized harm that is traceable to the challenged action of the defendant. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). SLMI has failed to identify any shareholders who claim to have suffered concrete and particularized harm due to SLMI's alleged failure to provide notice of the bankruptcy or the Motion to approve the

Stipulation[5]. Nor has SLMI pled facts which show how any such shareholder could have suffered concrete and particularized harm as a result of not receiving notice of the Motion. An equity interest owner must demonstrate that they have a pecuniary interest in the outcome of the matter to have standing. This means that they make a prima facie showing that there is enough value in the estate to pay all creditors in full and have enough left over to pay a dividend to the owners. In re Quanalyze Oil & Gas Corp., 250 B.R. 83, 90 (W.D. Texas 2000).

Not only is the complaint devoid of any factual allegations to this effect, but the affidavit of Gary Klausner, attached to the complaint, confirms that such allegations cannot be made. According to Mr. Klausner, the Stipulation and Order were "a fair and reasonable resolution of the dispute" with CSC in that it brought "finality" to the dispute, infused the estates with "much-need [sic] cash"; and saved the estate from incurring "additional fees and costs to prosecute the dispute with CSC" which the estates "did not have". (Klausner Dec. ¶¶ 8, 10, lines 6-7, 23-25 and 1-2, respectively). Mr. Klausner's testimony supports the position that the shareholders would not have had standing to object to SLMI's Motion, as SLMI lacked the resources to pay its creditors in full and have enough left over to pay a dividend to its owners.

Furthermore, there is no requirement in the Bankruptcy Code that shareholders receive notice of motions such as the one filed by SLMI to approve

---

[5] According to Fed.R.Bank.P. Rule 1007(a)(3), it is the debtor's obligation to

- 12 -

the Stipulation. The applicable Bankruptcy Rule 2002(a)(3) makes clear that there was no requirement that the compromise motion be served on shareholders. All that is required is notice "as is appropriate in the particular circumstances", and such opportunity for a hearing "as is appropriate in the particular circumstances". (See 11 U.S.C. Sec. 102(1)). The bankruptcy court ruled in approving the compromise motion that the notice, which was provided by SLMI's bankruptcy counsel, was sufficient and entered the Order granting the Motion. SLMI has failed to plead facts which show a basis for second guessing this decision.

SLMI's other argument that it is entitled to relief from the Settlement Approval Order because certain information was not disclosed to the bankruptcy court is untimely and lacking in merit. "Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations." See Fed. R. Civ. P. 60(b) Advisory Committee Note.

The Order was entered almost nine and half years ago. SLMI's bankruptcy counsel and Chief Executive Officer were aware of the Stipulation and the Motion to approve it. "An agent's knowledge is imputed to the corporation where the agent is acting within the scope of his authority and where the knowledge relates to matters within the scope of that authority". In re Hellenic, 252 F.3d 391, 395 (5th Cir. 2001). The knowledge of SLMI's bankruptcy counsel and Chief Executive Officer, neither of whom are alleged to have been acting outside of the scope of

file a list of equity owners.

- 13 -

their authority, was imputed to SLMI. SLMI has therefore been aware of the Settlement Approval Order, the circumstances surrounding its entry and the record of the bankruptcy court, since March of 2002. Wyle v. R.J. Reynolds Industries, Inc. 709 F.2d 585, 590 (9th Cir. 1983).

SLMI has also had constructive notice of its claims for over four years. Since as early as January, 2007, SLMI has been involved in other litigation relating to other orders made in the same bankruptcy proceeding. Moreover, as alleged in the complaint, the IP Rights have been openly and continuously exploited since the bankruptcy court transfer in 2002. (See Complaint ¶¶ 5, 8, 80, 85 and 90). Given SLMI's investigation and knowledge of the bankruptcy record and the open and continuous exploitation of the IP Rights, SLMI has had constructive notice of its claims for at least four years, which would bar any claim SLMI may have for fraud. (See California Code of Civil Procedure Section 338(d) – fraud has a three year statute of limitations which accrues when one knew or should have known about the fraud).

Furthermore, SLMI's substantial delay in bringing its claim will result in extreme prejudice to the Moving Parties. A defendant may establish prejudice by showing that it has invested money to expand its business and entered into business transactions based on presumed rights. Lotus Development Corp. v. Borland International Inc., 831 F.Supp. 220, 238-239 (U.S. Dist. Mass. 1993). (See also Jonnie D. Miller v. Glenn Miller Productions, Inc., 454 F.3d at 975, 1000 (9th Cir.

inequitable to apply laches. See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). SLMI has failed to allege facts which overcome this presumption or show on what basis it is entitled to trademark rights it has failed to exploit for almost a decade.

In addition to being untimely, SLMI's First Claim fails to state facts sufficient to state a claim for fraud on the court. Generally, non-disclosure by itself does not constitute fraud on the court. See England v. Doyle, 281 F.2d 304, 310 (9th Cir.1960) (failure to produce evidence, without more, does not constitute fraud on the court). Moreover, to show fraud on the court, one must plead and prove, by clear and convincing evidence, an unconscionable plan or scheme designed to improperly influence the court in its decision. Id at 309-310. Even perjury by a party or witness, by itself, is not normally fraud on the court. See Gleason v. Jandrucko, 860 F.2d 556, 559–60 (2d Cir.1988). Furthermore, the term "fraud on the court" is read narrowly, in the interest of preserving the finality of judgments."" Toscano v. Commissioner, 441 F.2d 930, 934 (9th Cir.1971).

SLMI's allegations of non-disclosure are too vague and lacking in specificity to show fraud on the court. Fraud must be pled specifically. See Fed. R. Civ. Proc. Rule 9(b). When based on non-disclosure, it must be pled that the person who allegedly omitted information had a duty to disclose it and that the information omitted was material. Hahn v. Mirda (2007) 147 Cal.App.4th 740, 745. Furthermore, "to justify setting aside a final order on the ground of fraud, the acts

- 16 -
MOTION TO DISMISS