EXHIBIT B

 Like 51K   Subscribe   Industry Tools   Newsletters   Daily PDF   Register   Log in

all you can ship $4.95
Now through October 2. shop now

**THE Hollywood REPORTER**

 TV Ratings
New and returning series

 Fall TV
Premieres this week

 X Factor
Latest updates

 Subscribe Now
Start for just $12

August 22

# 'Conan the Barbarian' Lawsuit Seeks Character Rights (Exclusive)

Just as 'Conan the Barbarian 3D' opens, SLMI files a blockbuster lawsuit to claim rights and profits.

8:44 AM PDT 8/22/2011 by Eriq Gardner

SHARE    Like 96   Send    Comments (#comments)



*Lionsgate*

If anybody thought that **Stan Lee Media Inc.**, the company which now operates independently from its comic book legend founder, was gone for good, guess again. On Friday, SLMI made a big move in U.S. District Court in California to grab back rights on the fictional character Conan the Barbarian and win proceeds from the just-released *Conan the Barbarian 3D* film.

The new suit comes from SLMI, which has had a rocky history since being founded by Stan Lee in the late 1990s.

Initially, the company looked to be on its way towards success after Lee assigned SLMI rights to his famous comic book characters. In 2000, the company added to its stable of rights by acquiring full ownership of **Conan Properties**. Then, the following year, SLMI entered bankruptcy, and the company's IP assets were diverted, leading to a decade of protracted litigation.

Last year, SLMI found its feet again after a Colorado court recognized SLMI's new board as the duly authorized representative of the company. Since then, the company has been looking to put back the pieces.

SLMI's latest splash is a lawsuit filed on the same day that the latest *Conan the Barbarian* film hit theaters.

According to the complaint, after SLMI went into bankruptcy in 2001, an unauthorized agent of the

Case 2:11-cv-06861-SVW -SS Document 30-5 Filed 09/30/11 Page 3 of 10 Page ID #:338

company purported to transfer its ownership of Conan Properties back to **Conan Sales Co**.

The company claims that the transfer of the "Conan" character is void because at that time in 2002, "the shares of Conan Properties and all other assets of SLMI were part of a bankruptcy estate and protected from unauthorized transfer by the automatic bankruptcy stay."

SLMI says that the defendants obtained relief from the automatic stay in March 2002 by getting a judge to sign off on a "Settlement Approval Order" but that this order was itself void because the defendants didn't provide notice and give 1,800 SLMI shareholders an opportunity to protect their interests by opposing the motion to transfer Conan.

The transfers, allegedly made by attorney **Arthur Lieberman** among others, is alleged to have constituted fraud and a breach of fiduciary duties. Lieberman himself is a defendant in this lawsuit.

In 2002, after Conan Sales Co. reacquired rights to Conan, it sold those rights to a Swedish company called **Paradox Entertainment**, which has spent the last decade attempting to revive the character's commercial value, including new comic books, a computer game, and now a 3D film from Nu Image/Millennium and Lionsgate.

In its lawsuit against Conan Sales Co., Paradox, Lieberman, and others, SLMI is demanding it be restored its rights over the franchise and that the defendants be ordered to turn over any money or property derived from the success of the character, including the newest film. Conan disappointed at the box office this weekend, bringing in about $10 million. Reports have pegged the budget as being anywhere from $70 million to $90 million.

Paradox couldn't be reached for comment.

Meanwhile, SLMI continues to wage war (http://www.hollywoodreporter.com/blogs/thr-esq/stan-lee-media-stan-lee-100268) against Stan Lee and **Marvel Entertainment** over rights to Spider-Man, the Incredible Hulk, X-Men, Iron Man, the Fantastic Four, Thor, and more. Similarly, the company believes that this IP was unlawfully transferred when the company was in bankruptcy protection. A California federal judge recently stayed proceedings, awaiting a ruling by the 2nd Circuit whether an alternative lawsuit in New York can be pursued once again.

Conan the Barbarian was created by **Robert E. Howard** in the 1930s, revived as a comic book character by Marvel Comics in the 1970s, and became a film starring **Arnold Schwarzenegger** in 1982.

*E-mail: eriqgardner@yahoo.com*

*Twitter: @eriqgardner*

**JASON MOMOA** (HTTP://WWW.HOLLYWOODREPORTER.COM/CATEGORY/ENTITIES/JASON-MOMOA)

**CONAN THE BARBARIAN** (HTTP://WWW.HOLLYWOODREPORTER.COM/CATEGORY/PROJECTS/MOVIES/CONAN-BARBARIAN)

SHARE    Like 96   Send    Comments (#comments)

**You might like:**







**Donald Trump Loses Libel Lawsuit Over Being Called A 'Millionaire'** (http://www.hollywoodreporter.com/thr-esq/donald-trump-loses-libel-lawsuit-232923) *(THR, ESQ.)* (http://www.hollywoodreporter.com/thr-esq/donald-trump-loses-libel-lawsuit-232923)

**Charlie Sheen Close to Settling 'Two and a Half Men' Legal Case; Will Be Paid Millions** (http://www.hollywoodreporter.com/thr-esq/charlie-sheen-close-settling-two-237338) *(THR, ESQ.)* (http://www.hollywoodreporter.com/thr-esq/charlie-sheen-close-settling-two-237338)

Sponsored (javascript:void(0)) **New Reasons to Stop Smoking** (http://www.lifescript.com/Health/Centers/Smoking_Cessation/Articles/New_Evidence_Why_You_Should_Stop_Smoking.aspx) *(Lifescript.com)* (http://www.lifescript.com/Health/Centers/Smoking_Cessation/Articles/New_Evidence_Why_You_Should_Stop_Smoking.aspx)

Sponsored (javascript:void(0)) **Find out how life's little luxuries can eat up your money!** (http://community.careonecredit.com/b/my_journey_out_of_debt/archive/2010/08/24/sacrificing-to-become-debt-free.aspx) *(CareOne)* (http://community.careonecredit.com/b/my_journey_out_of_debt/archive/2010/08/24/sacrificing-to-become-debt-free.aspx)

**12 Hollywood Airline Controversies** (http://hollywoodreporter.com/gallery/12-airline-controversies-240262) *(The Hollywood Reporter - Gallery)* (http://hollywoodreporter.com/gallery/12-airline-controversies-240262)

[?]

10

EXHIBIT C

```
 1  MARTIN J. BRILL (State Bar No. 53220)
    DAVID B. GOLUBCHIK (State Bar No. 185520)
 2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
    1801 Avenue of the Stars, Suite 1120
 3  Los Angeles, California 90067
    Telephone:  (310) 229-1234
 4  Facsimile:  (310) 229-1244
 5
    Attorneys for Chapter 11
 6  Debtors and Debtors in Possession
```

FILED MAR 25 2002 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA

ENTERED MAR 2- 2002 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA

LODGED MAR 18 2002 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## (SAN FERNANDO VALLEY DIVISION)

| | |
|---|---|
| In re<br><br>STAN LEE MEDIA, INC., a Delaware corporation, and STAN LEE MEDIA, INC., a Colorado corporation,<br><br>Debtors and Debtors in Possession<br><br>_x_ Affects Both Debtors<br><br>___ Affects Stan Lee Media, Inc., a Delaware corporation, Only<br><br>___ Affects Stan Lee Media, Inc., a Colorado corporation, Only | ) CASE NO. SV-01-11329-KL<br>)<br>) Chapter 11<br>)<br>) (Jointly Administered with Case<br>) No. SV-01-11331-KL)<br>)<br>)<br>) ORDER GRANTING MOTION PURSUANT<br>) TO BANKRUPTCY RULE 9019 TO<br>) APPROVE STIPULATION TO<br>) COMPROMISE DISPUTES WITH CONAN<br>) SALES CO., LLC<br>)<br>) [No hearing required unless<br>) requested]<br>)<br>)<br>)<br>)<br>)<br>) |

This Court, having considered the Motion (the "Motion") filed by Stan Lee Media, Inc., a Delaware corporation, and Stan

1

1  Lee Media, Inc., a Colorado corporation, debtors and debtors in
2  possession in the above-captioned Chapter 11 cases (the
3  "Debtors"), to Approve Stipulation (the "Stipulation") to
4  Compromise Disputes with Conan Sales Co., LLC ("CSC"), and no
5  opposition to the Motion having been filed, and other good cause
6  appearing therefore,
7      IT IS HEREBY ORDERED as follows:
8      1.  The Motion is granted;
9      2.  The Stipulation in the form attached as Exhibit "A" to
10         the Motion is approved; and
11     3.  The Debtors are authorized to take all steps
12         reasonably necessary to consummate the terms and
13         conditions of the Stipulation.
14
15 **IT IS SO ORDERED.**
16 Dated: March __, 2002    _____
                            The Honorable Kathleen T. Lax
17                          United States Bankruptcy Court

2

12

RICHARD K. DIAMOND (State Bar No. 070634)
ERIC P. ISRAEL (State Bar No. 132426)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
  a limited liability partnership
  composed of professional corporations
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Conan Sales Co., LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>STAN LEE MEDIA, INC., a Delaware corporation; and STAN LEE MEDIA INC, a Colorado Corporation,<br><br>Debtor. | Case No. SV 01-11329-KL<br>[Chapter 11]<br><br>(Jointly Administered with Case No. SV 01-11331-KL)<br><br>STIPULATION TO COMPROMISE DISPUTES WITH CONAN SALES CO., LLC<br><br>Date: March __, 2002<br>Time: __:_0 _.m.<br>Place: Courtroom "301"<br>21041 Burbank Blvd.<br>Woodland Hills, CA |

Stan Lee Media, Inc., the debtor and debtor-in-possession herein (the "debtor"); the Official Committee of Unsecured Creditors for the debtor's estate (the "Committee"); and Conan Sales Co., LLC ("CSC"), each through counsel, set forth a compromise of various disputes between them, subject to notice to creditors and approval of the Court.

FACTUAL RECITALS

1. On or about August 31, 2000, CSC and the debtor executed

EXHIBIT __A__

171885.2  22942                           20

13

1  a Purchase Agreement for the debtor to purchase from CSC all of
2  the issued and outstanding stock of Conan Properties LLC ("CPL"),
3  which in turn owned various intellectual property rights
4  associated with the character known as Conan and Conan the
5  Barbarian (collectively the "intellectual property rights").
6  Among other things, CSC received stock in the debtor which was
7  subject to certain price protection guarantees relating to certain
8  trading volume and price criteria (the "stock trading criteria").
9
10      2.  CSC contends that the stock trading criteria gave rise
11 to non-recourse obligations which were secured by a lien against
12 CPL's intellectual property rights and related contracts
13 (collectively the "guarantee obligations"), and that the lien was
14 intended to allow CSC to foreclose on the collateral in the event
15 that the debtor's stock did not meet the trading criteria.
16      3.  CSC contends that the stock trading criteria were not
17 met.
18      4.  CSC had negotiated, but the debtor documented and
19 entered into, an agreement with Warner Brothers pursuant to which
20 Warner Brothers was granted an option to make movies from the
21 intellectual property rights (the "Warner Brothers option").
22 Warner Brothers has until June 30, 2002 to exercise the Warner
23 Brothers option. Once exercised, there are payments including
24 cash of $2 million and gross participations in an amount between 2
25 1/2% and 5% of Gross.
26      5.  On or about February 11, 2001, Stan Lee Media, Inc. (the
27 "debtor") commenced this case by filing a voluntary petition for
28 relief under Chapter 11 of Title 11 of the United States Code.

171885.2  22942

14

1 The debtor is a debtor-in-possession.

2    6. On or about August 24, 2001, CSC filed a motion for
3 relief from stay seeking to foreclose on the intellectual property
4 rights (the "relief from stay motion").

5    7. The Committee opposed the relief from stay motion on a
6 variety of grounds, including that: (1) some or all of the
7 guarantee obligations were not due, (2) CSC's lien against the
8 intellectual property rights was avoidable as a fraudulent
9 conveyance, (3) CSC's lien was unperfected as to the intellectual
10 property rights, (4) the guarantee obligations were avoidable as a
11 penalty under bankruptcy and applicable State law, and (5) the
12 guarantee obligations were subject to subordination pursuant to
13 section 510(b) of the Code because they arose from the purchase or
14 sale of a security of the debtor. CSC filed supplemental papers
15 in support of the relief from stay motion, and the Committee
16 advises that, but for the within settlement, it would have filed
17 supplemental papers in support of its opposition. The debtor
18 filed a joiner in support of the Committee's opposition.

19    8. In order to resolve the issues raised by the relief
20 from stay motion including the issues raised as to the validity
21 and enforceability of CSC's lien and the underlying obligations,
22 the parties stipulate and agree as follows, subject to Court
23 approval.

### Terms of the Stipulation

24

25    9. RECITALS. Recitals 1 through 7 above are
26 incorporated herein by this reference.

27    10. PAYMENT. CSC agrees to make payments to the debtor
28 in the following amounts (collectively the "payment obligations"):

1           a.   $100,000 on the first business day following the finality of entry of the order approving this settlement;

2           b.   $100,000 on March 31, 2002;

3           c.   $75,000 on June 30, 2002;

4           d.   Only if and when Warner Brothers exercises the Warner Brothers option, an additional $200,000 immediately after the funds clear from the Warner Brothers payment; and

5           e.   Only if Warner Brothers exercises the Warner Brothers option, 20% of the proceeds received by CSC from the gross participation solely from the first film produced by Warner Brothers, but not any additional films, but only after the gross participation received by CSC exceed $1.2 million.

11.   RETURN OF STOCK AND ASSIGNMENT OF CONTRACTS.  On the first business day following finality of the order approving this stipulation, the debtor will execute documents necessary to assign back to CSC its stock in CPL.  The debtor also will assign to CSC all contract rights it granted relative to the intellectual property rights, including without limitation the Warner Brothers option, insofar as such rights, if any, are in the name of Stan Lee Media or any other subsidiary or affiliate other than Conan Properties, Inc.

12.   SECURITY.  Concurrent with the pledge of the CPL stock to it, CSC will execute and deliver to the debtor all documents necessary for the debtor to obtain a first priority, fully perfected security interest in the intellectual property rights.  CSC will grant the debtor a lien against the CPL stock and the intellectual property rights (collectively the "collateral") to secure the obligations set forth at ¶ 10 a.-e.